***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 *********** STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant-employer was an un-insured for all relevant times herein.
4. Plaintiff's average weekly wage will be determined from the hearing of this matter.
5. The issues to be determined from the hearing before the deputy commissioner are as follows:
(a) What is plaintiff's average weekly wage?
(b) What, if any, benefits is plaintiff entitled to receive under the North Carolina Workers' Compensation Act?
6. The sole issue to be determined on appeal by the Full Commission is the determination of plaintiff's average weekly wage.
 ***********
Based upon the competent evidence adduced from the record, the undersigned makes the following:
 FINDINGS OF FACT
1. The Stipulations and Findings of Fact contained in the Opinion 
Award of the Full Commission filed October 17, 2000 are incorporated herein by reference as though fully set forth.
2. Following the injury on July 13, 1998, plaintiff was unable to return to work due to his injuries until September 13, 1998, when he returned to work making equal or greater wages with a new employer, CPI.
3. On July 12, 1998 plaintiff resigned from his job with PPG Industries and immediately became available to work full-time for another employer.
4. On the morning of July 13, 1998 defendant was informed that plaintiff had quit his job at PPG the day before and was available to work full time, and defendant instructed Steve Clay to contact plaintiff and offer him a job for $10.00 per hour working with defendant.
5. Plaintiff accepted the offer of a job at $10.00 per hour and reported to work the morning of July 13, 1998 with defendant. Both plaintiff and Mr. Clay expected that plaintiff would work forty hours per week for the foreseeable future for defendant at $10.00 per hour.
6. Towards the end of the workday on July 13, 1998, the compensable accident occurred. Plaintiff did not return to work until September 13, 1998, when he began working for a new employer, CPI, at wages greater than or equal to $400.00 per week.
7. The undersigned have considered all five methods for calculating average weekly wage set forth in N.C. Gen. Stat. § 97-2(5) and finds that the first three methods would be inappropriate in this case due to the short and sporadic nature of plaintiff's employment with defendant. The first method is inappropriate as plaintiff worked less than 52 weeks immediately preceding his injury. The second method is inappropriate as it applies to an employee who has worked 52 weeks but missed more than 7 consecutive days during that period. The third method applies to employees who worked less than 52 weeks by calculating their average weekly wage by dividing the actual earnings by the number of weeks worked, provided the results are fair and just to both parties. This method is inappropriate as plaintiff only worked 2 days that were not consecutive, therefore this method would not be fair and just to both parties. Since it is impractical to compute the average weekly wage by the foregoing methods due to the shortness of time during which plaintiff was employed by defendant, the fourth method initially appears to be the appropriate method for calculation of plaintiff's average weekly wage. Plaintiff's coworker Steve Clay appears to be a suitable "like employee" under the fourth method. Steve Clay was a similar employee for defendant as contemplated by the fourth method of calculating average weekly wage as set forth in N.C. Gen. Stat. § 97-2(5), in that his job duties were almost identical to the duties expected of plaintiff, he worked for the same employer, and he earned the same hourly wage. Mr. Clay had an average weekly wage of $400.00. However, Steve Clay had not worked for defendant for 52 weeks prior to plaintiff's injury. For the forgoing exceptional reasons it would be unfair to calculate plaintiff's average weekly wage using the above-mentioned methods. Therefore, using the fifth method to compute plaintiff's average weekly wage to most nearly approximate the amount for which the injured employee would be earning were it not for the injury is fair and just to both parties.
8. Plaintiff's expectation that he would be able to work forty hours per week at $10.00 per hour for defendant beginning July 13, 1998 was reasonable under the circumstances. As contemplated by the fifth method set forth in N.C. Gen. Stat. § 97-2(5) for calculating average weekly wage plaintiff had an average weekly wage of $400.00 in his employment with defendant.
9. Plaintiff, as of the date of the most recent hearing before the deputy commissioner, has facial scarring from his injuries, which the deputy commissioner found to be disfiguring and repulsive. In addition, plaintiff has what is believed to be a screw head working its way out of the bone above his right eyebrow, such that it leaves a noticeable protrusion in his skin, which is also disfiguring and repulsive. Although plaintiff is willing to see his plastic surgeon again to determine whether anything can be done to ameliorate the protruding screw head, plaintiff is without health insurance or the funds to pay for such a visit.
10. Plaintiff continues to suffer from headaches and aching pain and blurred vision, which are all residual symptoms from the compensable injury. The aching pain is worse when plaintiff's activities require him to tilt his head forward as when he is looking down.
11. Plaintiff is in need of additional medical treatment to assess the screw head that is protruding in the region of his right eyebrow and to assess his complaints of blurry vision.
12. Plaintiff's blurry vision may be permanent in nature, but without an additional evaluation by an appropriate eye specialist, the undersigned is unable to determine whether Plaintiff has reached maximum medical improvement as to the blurry vision.
 *********** CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage should be calculated under the fifth statutory method in the amount of $400.00 per week, engendering a compensation rate of $266.68 per week. N.C. Gen. Stat. § 97-2(5).
2. Plaintiff is entitled to additional medical treatment to assess his blurry vision, protruding screw head, and headaches. N.C. Gen. Stat. §§97-25, 97-25.1.
3. Plaintiff is entitled to temporary total disability from the period of July 13, 1998 until September 13, 1998. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to permanent partial disability under N.C. Gen. Stat. § 97-31(24).
 *********** AWARD
1. Subject to attorney's fees hereinafter approved, defendant shall pay plaintiff total disability payments in the amount of $266.68 per week for the period of July 13, 1998 through September 13, 1998.
2. Plaintiff is entitled to permanent partial disability for facial scarring but this should not be paid until such time as it has been determined whether plaintiff is in need of further surgery to correct the problem that has developed from the prior surgery.
3. Plaintiff may be entitled to permanent partial disability benefits for his blurred vision but that Award is reserved until such time that Plaintiff has reached MMI on that injury;
4. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury when bills for same have been submitted to and approved by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability. This includes any future medical treatment that plaintiff may require.
5. A reasonable attorney fee in the amount of 25 percent of the compensation approved and awarded for plaintiff is approved and allowed for plaintiff's counsel. This amount shall be paid directly to plaintiff's counsel.
6. Defendants shall pay all costs for this matter.
7. This matter is retained for further Order following further medical evaluation of the protruding screw head and blurry vision pertaining to the permanent partial disability, if any, of the eye.
This the 21st day of December 2004.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/llc